Marcelo B. Gondim (CA SBN 271302)
*Admitted pro hac vice*
Gondim Law Corp.
1880 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-7770
Email: court@gondim-law.com
*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GILDOMAR RICARTE PINTO,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Defendants. | Civil Action No. 1:26-cv-14309-JEK<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

This motion presents a narrow question that does not require the Court to review any order of removal. On September 2, 2026, the Board of Immigration Appeals stayed Plaintiff Gildomar Ricarte Pinto's removal. On September 3, 2026, the Board served that stay on the DHS/ICE Office of the Chief Counsel in Boston. On September 9, 2026, with the stay still in force and unmodified, Defendants removed Plaintiff to Brazil. The question is whether Defendants possessed lawful authority to execute a removal that their own agency had stayed. They did not.

A stay of removal operates on the removal order itself: it is "the temporary setting aside of the source of the Government's authority to remove." *Nken v. Holder*, 556 U.S. 418, 429 (2009). The governing regulation confirms that execution may not proceed once "a stay of execution is specifically granted by the Board." 8 C.F.R. § 1003.2(f). And Defendants' own policy defines a

stay of removal as an order issued by the Executive Office for Immigration Review or a federal court that prevents ICE from executing a removal order. ICE Policy Directive No. 11061.1, *Facilitating the Return to the United States of Certain Lawfully Removed Aliens* (Feb. 24, 2012). Defendants removed Plaintiff anyway, after the Board served its order on Defendants' litigating component and after Plaintiff's family transmitted the order, the day before the flight, to the deportation officer and to multiple ICE enforcement and legal offices.

Plaintiff asks for the ordinary remedy where the Government removes a person without lawful authority: an order that the Government "facilitate" his return and "ensure that his case is handled as it would have been had he not been improperly" removed. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (mem.). Plaintiff does not ask the Court to decide whether he should ultimately remain in the United States. That question belongs to the Board, in the proceeding the Board stayed his removal to protect.

## STATEMENT OF FACTS

Plaintiff is a native and citizen of Brazil who lived for years in Chelmsford and North Chelmsford, Massachusetts, where he lived with his wife, Nayara Ricarte, and their children. Compl. ¶¶ 14, 16 (ECF No. 1). He lived in Massachusetts for ten years, has been married since 2007, and worked throughout that time in drywall construction, starting his own company in 2021. Ricarte Pinto Decl. ¶ 3. His wife and children continue to live in Massachusetts. *Id.* ICE's Boston Field Office arrested him in Burlington, Massachusetts on January 20, 2026, on an administrative warrant premised on "the pendency of ongoing removal proceedings," not on any final order of removal. *Id.* ¶¶ 25-26. His removal proceedings were venued before the Chelmsford/Wyatt Immigration Court. *Id.* ¶ 29.

On July 21, 2026, Plaintiff, through counsel, filed a motion with the Board, and counsel thereafter requested a stay of removal pending its adjudication. Decl. of Marcelo B. Gondim ("Gondim Decl.") ¶¶ 3-4 & Ex. C. On September 2, 2026, Appellate Immigration Judge Hansell granted the request, concluding that "a stay of removal is warranted." *Id.* ¶ 5 & Ex. A (Stay Order). On September 3, 2026, the Board's Chief Clerk transmitted the stay decision to Plaintiff's counsel and to the DHS/ICE Office of the Chief Counsel in Boston. *Id.* ¶ 6 & Ex. B (Notice). The Board has neither adjudicated the pending motion nor vacated or modified its stay. *Id.* ¶ 7.

Plaintiff learned from his wife on September 2, 2026 that the Board had granted the stay. Ricarte Pinto Decl. ¶ 5. On September 8, 2026, ICE officers told Plaintiff that he had been scheduled for removal, and he telephoned his wife to tell her. *Id.* ¶ 6. Before he was removed, Plaintiff told the officers at the facility where he was held that the Board had stayed his removal and asked them to verify it; they told him there was nothing they could do. *Id.* ¶ 7. Plaintiff's family also contacted ICE that day. Records the family provided to counsel reflect that ICE issued a call confirmation number (ERO002126036) by text message identifying an ICE office email address to which the stay order should be sent; that between 1:46 p.m. and 10:04 p.m., ten emails attaching the Board's stay order and identifying Plaintiff by name and A-number were sent to ICE addresses, including field office outreach addresses, a deportation officer, ICE Enforcement and Removal Operations, and the duty attorneys of several Offices of the Principal Legal Advisor; and that at least twenty-five calls were placed to ICE office telephone numbers. Gondim Decl. ¶ 10 & Exs. E-G. Defendants did not cancel the removal. No one informed Plaintiff that the stay had been lifted, and he was given no document concerning his removal. Ricarte Pinto Decl. ¶ 8. On September 9, 2026, Defendants removed Plaintiff to Brazil. *Id.* ¶ 9.

Plaintiff filed this action on September 21, 2026, twelve days after his removal. ECF No.

1. Service on all Defendants was completed and returned executed on October 28, 2026. ECF No. 6. Plaintiff remains in Brazil, separated from his wife, his home, and his counsel, while the motion the Board stayed his removal to preserve remains pending.

## LEGAL STANDARD

A party seeking a preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In this Circuit, likelihood of success is "the sine qua non" of the inquiry. *New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). Where the Government is the opposing party, the third and fourth factors merge. *Nken*, 556 U.S. at 435.

Plaintiff acknowledges that the relief he seeks is in part mandatory, and that such relief "normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Braintree Laboratories, Inc. v. Citigroup Global Markets Inc.*, 622 F.3d 36, 41 (1st Cir. 2010) (citation omitted). Those exigencies are present here. The relief requested restores, rather than alters, the last uncontested status between the parties: the state of affairs on September 8, 2026, when the Board's stay was in force and Plaintiff was in the United States. The only reason that restoration requires affirmative action is that Defendants unilaterally changed the status quo in violation of their own agency's order. A party may not defeat preliminary relief by first acting unlawfully and then invoking the resulting state of affairs as the status quo the Court must preserve.

## ARGUMENT

### I. This Court Has Jurisdiction to Grant the Requested Relief.

Defendants can be expected to argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction because Plaintiff's claims arise from a decision to execute a removal order. That argument fails. Section 1252(g) applies only to three "discrete actions" and is "much narrower" than a general jurisdictional bar. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999); *accord Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 19 (2020). The First Circuit has confirmed that the provision insulates only the Government's discretionary decision to take an enumerated action and does not reach claims that the Government's conduct was unlawful. *Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023).

Plaintiff does not challenge any exercise of discretion. He challenges Defendants' execution of a removal at a time when the Board's stay had suspended their authority to remove at all. Courts addressing removals carried out in violation of a stay have held that § 1252(g) does not apply, because the Government has no discretion to violate a binding stay. *Arce v. United States*, 899 F.3d 796, 800-01 (9th Cir. 2018); *Guerra-Castaneda v. United States*, 656 F. Supp. 3d 356 (D. Mass. 2023) (Gorton, J.) (rejecting § 1252(g) defense where ICE removed plaintiff despite a stay of removal); *see also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022) (construing "removal orders" in § 1252(g) to mean executable orders).

Nor do 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) channel this case to a court of appeals. Those provisions govern review of orders of removal and questions arising from removal proceedings. Plaintiff asks this Court to review no order of removal and no determination of an immigration judge or the Board. His claim is independent of, and collateral to, the merits of any

removal decision, and it could not be raised in a petition for review. *See Aguilar v. U.S. Immigration & Customs Enforcement Division of Department of Homeland Security*, 510 F.3d 1, 11 (1st Cir. 2007). The challenged conduct, moreover, is closely tied to this District: Defendants' Boston Field Office arrested Plaintiff, maintained his file and his property, and was the office of the litigating component on which the Board served its stay. Compl. ¶¶ 14, 19, 35.

**II. Plaintiff Is Likely to Succeed on the Merits.**

**A. Defendants Had No Authority to Execute a Stayed Removal.**

The Administrative Procedure Act requires a reviewing court to hold unlawful and set aside agency action taken "in excess of statutory jurisdiction, authority, or limitations" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(C), (D). Defendants' September 9, 2026 removal of Plaintiff was both.

A stay "operates upon the judicial proceeding itself," including by "temporarily divesting an order of enforceability." *Nken*, 556 U.S. at 428. In the removal context, a stay returns the parties to the status quo that existed before the removal order was entered. *Id.* at 429. While the Board's stay was in effect, therefore, Defendants possessed no operative order to execute. The Attorney General's regulations say the same thing in terms: although the filing of a motion before the Board does not itself stay execution, execution may proceed only "unless a stay of execution is specifically granted by the Board." 8 C.F.R. § 1003.2(f). The Board specifically granted such a stay here. Gondim Decl. Ex. A.

Defendants are bound by that regulatory scheme. An agency must follow its own regulations, and action taken in disregard of them is unlawful. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954). Defendants' own Directive 11061.1 recognizes that a stay issued by EOIR prevents ICE from executing a removal order. The Board is a component

of EOIR. Removing Plaintiff in the face of that stay was not an exercise of enforcement discretion; it was an exercise of a power that Defendants did not have.

**B. Defendants Had Actual Notice of the Stay.**

Defendants cannot plausibly claim ignorance. The Board served the stay on Defendants' own Office of the Chief Counsel in Boston on September 3, 2026, six days before the removal. Gondim Decl. ¶ 6 & Ex. B. Service on DHS's litigating component is notice to the agency; Defendants cannot avoid it by pointing to a failure of internal communication. Plaintiff himself told the officers at the facility where he was held that the Board had stayed his removal and asked them to verify it; they told him there was nothing they could do. Ricarte Pinto Decl. ¶ 7. And records provided by Plaintiff's family reflect that, on the day before the removal, the stay order was sent to ICE in writing ten times, including to the address ICE itself designated, accompanied by repeated telephone calls. Gondim Decl. ¶ 10 & Exs. E-G. Agency action is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem." *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983). A binding stay of the very act the agency was about to perform is the most important aspect of the problem there could be. Even if Defendants were to establish that some failure of internal communication explains the removal, that would not supply the authority the stay withdrew; it would confirm only that the removal was unlawful by mistake rather than by design.

**C. Plaintiff Is Likely to Succeed on His Due Process Claim.**

Independently, the Fifth Amendment protected Plaintiff, while he was physically present in the United States, against deprivation of liberty without due process of law. The Board's stay gave Plaintiff a concrete entitlement to remain in the United States while the Board adjudicated

his motion. Defendants extinguished that entitlement without notice, without an opportunity to be heard, and without any process at all, despite repeated actual notice that the Board had stayed the removal. That is a paradigmatic procedural due process violation. *Cf. Abrego Garcia*, 145 S. Ct. at 1018 (requiring the Government to ensure that a wrongfully removed individual's case is handled as it would have been absent the improper removal).

**III. Plaintiff Is Suffering Irreparable Harm.**

The Supreme Court has explained that removal "is not categorically irreparable" precisely because those who prevail "can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken*, 556 U.S. at 435. That reasoning assumes the availability of the remedy Plaintiff seeks. Where, as here, the Government has removed a person in violation of a stay and has not facilitated his return, the premise on which removal is deemed reparable is absent, and the harm becomes irreparable.

The harm is concrete. Plaintiff has not seen his wife or children since his arrest in January 2026, and he has been separated from them and from his home in Massachusetts since September 9, 2026. Ricarte Pinto Decl. ¶ 10. He was the household's primary provider; his wife now carries the family's support, the care of their children, and the burden of his legal case alone, and his children repeatedly ask when he can come home. Ricarte Pinto Decl. ¶ 10. He arrived in Brazil without his belongings, his wallet, his telephone, or any money, and was able to let his family know where he was only with the help of a nongovernmental organization that assists people upon arrival. *Id.* ¶ 9. His removal also threatens the Board proceeding that the stay was entered to preserve: Defendants may contend that Plaintiff's physical departure withdrew or mooted his pending motion. *See* 8 C.F.R. § 1003.2(d). Whatever the merits of that contention, the risk that the Board will be deprived of the opportunity to decide Plaintiff's motion in the posture in which

it stayed his removal is precisely the injury the stay was designed to avert, and no post-judgment remedy can retroactively restore the procedural posture that the removal disrupted. Each day that passes further degrades Plaintiff's ability to participate in his own case, to communicate with counsel, and to obtain the relief the stay was designed to keep available. Ricarte Pinto Decl. ¶ 11.

Plaintiff has not delayed. He filed this action twelve days after his removal, completed service on all Defendants, and [demanded that Defendants voluntarily facilitate his return]. Defendants have neither returned him nor explained why they have not.

**IV. The Balance of Equities and the Public Interest Favor Relief.**

The public interest is served when agencies obey their own orders and the law that governs them. There is "generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Conversely, the public has a substantial interest in ensuring that a stay entered by the Board of Immigration Appeals means what it says.

The burden on Defendants is modest. ICE maintains established procedures for facilitating the return of removed individuals, including boarding letters permitting commercial air travel, coordination with a United States embassy or consulate for travel documents, and parole at a port of entry. Directive 11061.1. Courts routinely require the Government to use those procedures where removal was unlawful. *See Abrego Garcia*, 145 S. Ct. at 1018; *Lopez Belloza v. Hyde*, No. 25-13499-RGS, 2026 WL 407953 (D. Mass. Feb. 13, 2026) (ordering Government to facilitate return of individual removed in violation of a court order barring removal); *Ramos-Lopez v. Blanche*, No. 1:26-cv-01175, ECF No. 30 (D. Md. 2026) (ordering Government to facilitate return to restore status quo ante and to report on steps taken).

Defendants may argue that returning Plaintiff would be futile because he could be

removed again if the Board ultimately denies his motion. That argument proves too much. Whether Plaintiff may remain in the United States is the question the Board stayed his removal to decide, and Defendants may not prejudge it by executing a removal the Board had suspended. If the Board denies the motion and lifts the stay, Defendants will be free to proceed through lawful means. What Defendants may not do is skip that process. Notably, the requested order does not require Plaintiff's release; it restores him to the custodial and procedural status he occupied on September 8, 2026, leaving Defendants' detention authority exactly where it stood before the unlawful removal. Plaintiff has stated under penalty of perjury that he will cooperate fully with any travel arrangements and comply with all conditions imposed on him, understanding that he may be returned to ICE custody. Ricarte Pinto Decl. ¶ 12.

Finally, Plaintiff asks only that Defendants "facilitate" his return, the formulation the Supreme Court approved in *Abrego Garcia*, 145 S. Ct. at 1018, and that they report to the Court on the steps they take. That request respects the deference owed to the Executive in the conduct of foreign affairs while ensuring that the Executive's own unlawful act is undone.

**V. The Court Should Waive Security or Require Only a Nominal Bond.**

Rule 65(c) vests the Court with discretion to set the amount of security, including a nominal amount or none, particularly where the movant seeks to vindicate public rights and the restrained party faces no realistic financial harm. *See Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984). Facilitating the return of one individual through Defendants' existing procedures imposes no cognizable monetary loss on Defendants. The Court should waive security or set it at a nominal amount.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion and enter the proposed preliminary injunction.

Dated: November 25, 2026

Respectfully submitted,

/s/ Marcelo Gondim

Marcelo B. Gondim (CA SBN 271302)
Gondim Law Corp.
1880 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-7770
Email: court@gondim-law.com
*Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2026, I electronically filed the foregoing memorandum with the Clerk of the United States District Court for the District of Massachusetts using the CM/ECF system, which will send notification of such filing to all registered participants, and that I caused a copy to be served on the United States Attorney's Office for the District of Massachusetts by first-class mail.

/s/ Marcelo Gondim

Marcelo B. Gondim (CA SBN 271302)
Gondim Law Corp.
1880 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-7770
Email: court@gondim-law.com
*Admitted pro hac vice*